# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

|  |  |
|---|---|
| | C/A NO: 1:19-cv-3463-JMC |
| Deborah M. Hutto | |
| Plaintiff | **COMPLAINT** <br> (Jury Trial Requested) |
| vs. | |
| Regional Management Corp. d/b/a Regional Finance | |
| Defendant | |

Debra M. Hutto ("Hutto" or "Plaintiff") files this Complaint against Regional Management Corp. d/b/a Regional Finance ("Regional" or "Defendant"). The Plaintiff respectfully shows the Court the following:

## JURISDICTION

1.      The Plaintiff is a resident of Edgefield County, South Carolina.  Her address is 512 Stephens Mill Drive, North Augusta, SC 29860.

2.      The Defendant is a lender operating under the name "Regional Finance" that provides installment loan products to South Carolina consumers like Plaintiff.

3.      Defendant is incorporated in Delaware and Defendant's principal place of business is located at 979 Batesville Rd. Ste B, Greer, SC 29651.

4.      Jurisdiction and venue is proper in Aiken County because the underlying loan was created at Regional's office located at 404 E. Martintown Rd, Suite D, North Augusta, SC

1

29841. Also, the allegedly improper telephone calls were made primarily, if not exclusively, from the Aiken County branch office of Defendant.

5.     The basis for federal court jurisdiction is a federal question under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

## FACTUAL ALLEGATIONS

6.     The Plaintiff re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

7.     On or about December 12, 2016, Plaintiff's counsel Stone Law Firm contacted Regional Finance and informed Regional Finance that Plaintiff had retained Stone Law Firm and that Stone Law Firm was representing Debora Hutto in bankruptcy matters.

8.     From that point forward, Regional Finance knew or should have known not to contact the Plaintiff because she was represented by Stone Law Firm.

9.     However, the Defendant continued to contact Plaintiff directly instead of through her attorney.

10.     Upon information and belief, based on records provided by the Defendant, from December 14, 2016, after the Defendant was put on notice that the Plaintiff was represented by counsel, until March 31, 2017, the Defendant contacted the Plaintiff at least fifty-five (55) times. The Plaintiff actually believes that the Defendant contacted her more frequently than Defendant's records indicate.

11.     The Plaintiff, through counsel, sent a complaint letter to the South Carolina Department of Consumer Affairs on March 28, 2017, informing them of the Defendant's repeated consumer violations.

12.     Plaintiff's complaint was given the complaint number C17-00964 and was investigated by Mr. Steve Graham of the South Carolina State Board of Financial Institutions Consumer Finance Division.

13.     Mr. Graham provided the Plaintiff with a copy of his report on April 12, 2017.

14.     Mr. Graham's report states during his investigation he spoke with the Defendant's Manager, Hough Dockins. Mr. Graham informed Hough Dockins "that if a creditor seeks to communicate with a consumer who is represented by an attorney when such fact is known to the creditor, a court of law may consider this type of activity as harassment."

15.     The Defendant provided the South Carolina Department of Consumer Affairs with records of the Plaintiff's account from 9/03/16 through 5/01/17.

16.     Per the records sent by Regional Finance to the South Carolina Department of Consumer Affairs and the Plaintiff's call logs, the Defendant contacted the Plaintiff at least fifty-five times after the Defendant knew or should have known the Plaintiff was represented by counsel.

17.     Per the records sent by Regional Finance to the South Carolina Department of Consumer Affairs and the Plaintiff's call logs, after Defendant knew or should have known the Plaintiff was represented, the Defendant contacted the Plaintiff multiple times in in a twenty-four hour period causing her phones to repeatedly ring on at least nineteen occasions after the Defendant knew or should have known the Plaintiff was represented by counsel.

18.     Per the records sent by Regional Finance to the South Carolina Department of Consumer Affairs and the Plaintiff's call logs, the Defendant contacted the Plaintiff

multiple times in in a twenty-four hour period causing her phones to repeatedly ring on at least seventeen occasions before December 12, 2016.

19.     Upon information and belief, the Defendant contacted the Plaintiff multiple times in in a twenty-four hour period causing her phones to repeatedly ring on at least thirty-six occasions.

20.     Of the occasions on which the Defendant contacted the Plaintiff more than once in a twenty-four hour period causing her phones to repeatedly ring, the Defendant contacted the Plaintiff three or more than three times in one day on fourteen occasions and more than four times on one day on three occasions and more than five times in one day on two occasions.

21.     Per the records sent by Regional Finance to the South Carolina Department of Consumer Affairs, the Defendant contacted the Plaintiff six times in one day on March 29, 2017. This was just one day after Plaintiff's counsel called the Defendant to tell the Defendant they should not call the Plaintiff because she was represented.

22.     This was not the first time the Defendant repeatedly harassed the Plaintiff in one day. On November 29, 2016, per the records sent by Regional Finance to the South Carolina Department of Consumer Affairs, the Defendant contacted the Plaintiff seven times in a single day.

23.     The Plaintiff's voicemail logs represent that at least thirteen voicemails were left by Regional Finance from December 6, 2016 to February 7, 2017 alone.

24.    Regional Finance also called the Plaintiff's place of work and her family members or references on multiple occasions after the Defendant was put on notice that the Plaintiff was represented.

25.    Upon information and belief, the Defendant called the Plaintiff's place of work after the Defendant was put on notice that the Plaintiff was represented at least six times.

26.    The records sent by the Defendant to the South Carolina Department of Consumer Affairs indicate the Defendant knew Stone Law Firm represented the Plaintiff. Some of the notations on the Defendants records include the following:

    a.    On 12/14/16 the account notes state, "DS LEFT MESSAGE SEE WHO ATT IS. FOR BANKRUPSY".

    b.    On 2/08/17 the account notes state, "DS HAS AN ATT. DANIEL STONE 1803 407 6565 NO CASE NUMBER YET WILL CALL BACK END OF WEEK…"

    c.    On 2/15/17 the account notes state, "DS LEFT MESS ATT TO CAL ABOUT CASE NUMBER."

    d.    On 2/16/17 the account notes state, "DS CALLED ATT WAITING OWN CASE NUMBER…"

    e.    On 2/20/17 the account notes state, "DS WAITING OWN CASE".

    f.    On 2/21/17 the account notes state, "DS WAITING OWN CASE NUMBER".

    g.    On 2/27/17 the account notes state, "DS NOT HAVE CASE NUMBER YET."

    h.   On 3/05/17 the account notes state, "HD STILL WAITING ON CASE NUMBER."

    i.   On 3/13/17 the account notes state, "DS SHE HAS NO CASE NUMBER NOT PD ATT. ANYTHING YET".

    j.   On or about 3/24/17 or 3/28/17 the account notes state, "DS MR STONE WANTED TO KNOW WHY WE CALLED HER SO MUCH SAID UNTIL WE GET CASE NUMBER WE WILL CONTINUE TO CALL SHE HAS NOT PAID ANYTHING TO ATT DANIEL STONE…"

27.    The Defendant's records indicate the Defendant knew the Plaintiff had an attorney on December 14, 2016. This was two days after Plaintiff's counsel called the Defendant to inform them that the Plaintiff was represented by Stone Law Firm.

28.    The notes included in the records provided by Regional Finance to the South Carolina Department of Consumer Affairs clearly indicate that the Defendant was aware the Plaintiff had an attorney on February 8, 2017.

29.    From 2/08/17 until 5/1/17 the Defendant contacted the Plaintiff at least twenty-one times.

30.    The Plaintiff, her attorney, and her attorney's staff talked to Regional Finance on multiple occasions. Plaintiff and Plaintiff's counsel are of the belief that they spoke to the Defendant on more occasions than are listed in Defendant's records. Plaintiff's counsel spoke to an employee of the Defendant named Donna. Donna was almost always the employee that called the Plaintiff. Plaintiff's counsel made it explicitly clear to Donna on more than one occasion that Stone Law Firm represented Plaintiff.

31.     On one occasion, at or about 1:41 P.M. on March, 28th 2017, Plaintiff's counsel called Regional Finance and asked Donna why the Defendant continued to call the Plaintiff. Plaintiff's counsel made it clear that Plaintiff retained Stone Law Firm and Donna told Plaintiff's counsel she **"HAD"** to continue calling until she had a case number. Plaintiff's counsel has notes to corroborate this conversation as well as an email Plaintiff's counsel sent to a colleague that will confirm the time, date and substance of such conversation. The Plaintiff and her counsel would like to stress to the Court that Donna was never rude to the Plaintiff or the Plaintiff's counsel. Donna was very respectful and professional each time the Plaintiff or Plaintiff's counsel spoke to her.

32.     After Plaintiff's counsel called the Defendant on March 28, 2017 and told the Defendant again that the Plaintiff was represented by Stone Law Firm, the Defendant contacted the Plaintiff at least eleven times. On March 29, 2017, the day after Plaintiff's counsel spoke with Defendant's employee Donna, the Defendant called the Plaintiff six times in a single day.

33.     Defendant's employee Donna Spence also called the Plaintiff at her place of work on December 23, 2016 and at her home on December 27, 2016 from her personal cell phone number (803) 270-0111.

34.     On December 23, 2016, at or about 11:00 or 12:00, the Plaintiff's work phone rang. The Plaintiff's co-worker answered the call, the caller said she was a friend of the Plaintiff's that worked at a bank and asked to speak with the Plaintiff. The Plaintiff thought this was strange bur answered the phone. The caller was actually Donna from Regional. Donna told the Plaintiff that she lied about her identity when she called so the

7

Plaintiff wouldn't get into trouble. The Plaintiff believes this was a lie and that Donna just wanted to get the Plaintiff on the phone. The Plaintiff told Donna that she had retained an attorney on December 12, 2016 and was filing bankruptcy. The Plaintiff gave Donna the name, phone number, and address of her attorney. Donna told the Plaintiff that she had already called the Plaintiff's attorney but there was no case number and without a case number her company would make her continue to call. The Plaintiff was frustrated and told Donna something to the effect of, "that's why I paid an attorney!" Donna then told the Plaintiff that if she could come up with $50 the Plaintiff's account would be good until January and the Plaintiff wouldn't have to worry about the Defendant calling her.

35.    The records provided by the Defendant to the Department of Consumer Affairs state the Plaintiff had not paid her attorney. This statement is false. The Plaintiff paid her attorney on December 12, 2016, the day she retained Stone Law Firm and the day Stone Law Firm called the Defendant to put them on notice that the Plaintiff was represented. At no time during the course of the representation did Plaintiff or Plaintiff's counsel state that the Plaintiff had not yet paid her attorney. Furthermore, it is not necessary that the Plaintiff pay any sum to her counsel to begin the attorney-client relationship or be considered represented by the Defendant.

36.    The Plaintiff has attempted to reach an amicable settlement with the Defendant but these attempts have been unsuccessful. Because the Defendant has not been willing to resolve this issue without litigation, this complaint follows.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE SOUTH CAROLINA**
**CONSUMER PROTECTION CODE**

37.    The Plaintiff re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

38.    The South Carolina Consumer Protection Code ("SCCPC") can be found at S.C. Code § 37-1-101 *et seq.*

39.    The Plaintiff is a "consumer" as defined at S.C. Code § 37-1-201.

40.    The Defendant is a "creditor" as defined at S.C. Code § 37-1-201.

41.    The loan that Defendant made to Plaintiff is a "consumer loan" as defined at S.C. Code § 37-3-104 and a "consumer credit transaction" as defined at S.C. Code § 37-1-201.

42.    S.C. Code § 37-5-108 prohibits unconscionable conduct when collecting a debt in regards to a consumer credit transaction.

43.    The Plaintiff informed the Defendant that she retained Stone Law Firm on December 12, 2016.

44.    The records provided by the Defendant to the South Carolina Department of Consumer Affairs show the Defendant knew the Plaintiff was represented. On December 14, 2016, Defendant's records indicate Defendant knew Plaintiff had retained counsel and was planning on filing bankruptcy. The Defendant's records again affirmatively indicate the Defendant knew the Plaintiff retained counsel on February 8, 2017. The Defendant's records clearly state the Plaintiff "HAS AN ATT. DANIEL STONE." On March 8, 2017 the Defendant's records indicate that all "PAPERS MUST BE SENT TO THE ATTORNEY'S OFFICE." This is more evidence the Defendant knew the Plaintiff was represented and the Defendant knew that they should not be contacting the Plaintiff.

Further evidence that the Defendant knew Stone Law Firm represented the Plaintiff is provided in paragraph 26 above.

45.     The Defendant had actual knowledge the Plaintiff was represented by Stone Law Firm. The Plaintiff informed the Defendant that she was represented and the Defendant spoke with the Plaintiff's Attorney on multiple occasions. During such conversations, it was clearly established Stone Law Firm represented the Plaintiff regarding her debt to the Defendant and that the Defendant was prohibited from contacting the Plaintiff.

46.     The Defendant disregarded these multiple warnings and continued to contact the Plaintiff by telephone and mail after they knew or should have known the Plaintiff obtained representation. The Defendant also contacted the Plaintiff's friends and family members as well as her place of work after the Defendant knew or should have known Stone Law Firm represented the Plaintiff.

47.     It is a violation of Sec. 37-5-108(5)(b)(ii) of the South Carolina Consumer Protection Code when a creditor contacts a consumer attempting to collect a consumer credit transaction debt when the creditor knows the consumer is represented by an attorney.

48.     The Defendant also contacted the Plaintiff multiple times within a 24 hour time period on more than one occasion. The Defendant contacted the Plaintiff up to seven times in a single 24 hour time period. Multiple contacts in a 24 hour period, causing the Plaintiff's telephone to repeatedly ring, is a violation of the South Carolina Consumer Protection Code, Sec. 37-5-108(5)(b)(vii), for every time the Defendant contacted the Plaintiff more than once within a 24 hour time period.

49.     In addition to the harassing contacts by the Defendant to the Plaintiff, the

Defendant contacted the Plaintiff's friends and family on multiple occasions after the

Defendant knew, or should have known, that the Plaintiff had retained Stone Law Firm.

This is an additional violation of the South Carolina Consumer Protection Code, Sec. 37-

5-108(5)(b)(iv).

**SECOND CAUSE OF ACITON**
**NEGLIGENCE**

50.     The Plaintiff re-alleges and reasserts the information alleged in the preceding

paragraphs as if repeated verbatim.

51.     The Defendant acted negligently in handling the Plaintiff's account.

52.     The Defendant had a duty not to contact the Plaintiff after the Plaintiff retained

Stone Law Firm. This duty is created by law.

53.     The Defendant breached that duty by repeatedly contacting and harassing the

Plaintiff despite knowing Plaintiff was represented by Stone Law Firm.

54.     The Defendant's improper contact is the actual and proximate cause of actual

damages suffered by the Plaintiff, and the Plaintiff incurred significant harm as a result of

the Defendant's breach of its duty to Plaintiff.

55.     The Plaintiff has suffered severe psychological and medical injuries as a direct

result of the repeated improper contact by the Defendant. These injuries are reflected in

her medical diary and can be corroborated by family members who witnessed how the

Defendant's actions affected her and by doctors who treated her for the injuries caused by

the Defendant. The Plaintiff has been forced to visit her Primary Care Physician on

multiple occasions and various specialists because of the injuries caused by the Defendant's actions.

56.    The Plaintiff has been battling with depression and anxiety ever since the Defendant started making calls. Her anxiety and depression has only gotten worse as the calls became more and more frequent.

57.    The Plaintiff was prescribed various anxiety and anti-depressant medications as well as blood pressure medication as a result of the Defendant's harassment.

58.    The Defendant's continued harassment caused the Plaintiff to suffer extreme stress and anxiety causing inflammation in the stomach.

59.    The Defendant's continued harassment also caused the Plaintiff to suffer from insomnia for which she has been prescribed medication and she has also been forced to take several over the counter medications to help her sleep.

60.    Additionally, Plaintiff has been forced to miss a substantial amount of work time because of the injuries caused by Regional Finance. She had to take work off for doctor visits and has been forced to take time off of work because the stomach pain became so great she was unable to get out of bed. This stomach pain started in January 2017 and is directly correlated to stress and anxiety which resulted from the Defendant's continued harassment. Because of this stomach pain the Plaintiff has missed 85 hours without pay being only straight time and 145.5 hours without pay resulting in the loss of at least $5,115.78 in wages.

61.    The Plaintiff's medical diary further details multiple panic and anxiety attacks, her battles with anger and fear when going to stores that share a parking lot with Regional

Finance's office location, as well as "freak outs" every time the phone rings. The Plaintiff

developed a fear of the phone ringing because every time it did she knew it was the

Defendant and they were going to harass her no matter what she told them. The Plaintiff

also suffered panic attacks from the Defendant's continued calls. The Plaintiff has

described the continued harassment by Regional Finance as "stalking" and has stated she

felt Regional Finance was "out to get her regardless of the laws they have been

breaking".

62.     Because the Defendant continued to harass the Plaintiff after she asked them not

to contact her, and the Defendant was warned not to contact her any more by her

attorney, the Plaintiff has also lost faith in legal system, the laws of this state, the

protections she is statutorily provided, and her attorney.

63.     The Defendant has also caused the Plaintiff to be severely embarrassed around a

number of individuals as well. She is embarrassed to talk to her friends who are

constantly called by the Defendant. She is embarrassed every time she talks to her family

because every time she does her family members tell her how many times Regional

Finance called. The same is true in regards to her friends. Her friends have become

annoyed by the continued calls and this situation has caused the Plaintiff to lose close

personal friends of many years. As if constantly calling the Plaintiff as well as her friends

and family was not enough, now the Plaintiff is also embarrassed to go to work. She is

embarrassed to go to work because the Defendant has also called her supervisor's office.

64.     The Defendant has made the Plaintiff feel like she is being attacked from every

angle in all aspects of her life. She no longer feels safe at home, has lost long-time

friends, and cannot even talk to her family about these issues because frankly they are fed up with the constant calls from the Defendant also. The Plaintiff has felt helpless because she can not get the calls to stop and also felt let down by her attorney because even after retaining Stone Law Firm the Defendant's harassment got worse.

## THIRD CAUSE OF ACTION
## INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

65.    The Plaintiff re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

66.    Defendant intentionally or recklessly inflicted severe emotional distress to the Plaintiff as a result of its conduct.

67.    If the conduct by the Defendant was not intentional, it was at least negligent.

68.    The conduct of the Defendant was extreme and outrageous. The conduct of the Defendant is regarded as atrocious and utterly intolerable in a civilized community. It is atrocious for a creditor to call an individual seven times in a single day. It is atrocious for a creditor to call an individual in an attempt to collect a debt two times on the day before Thanksgiving and two times on the day after Thanksgiving, three times on the day before and after Christmas, and six times the day after the Plaintiffs attorney called the creditor to remind them, for at least the fourth time, that the Plaintiff was represented so they should not be calling her.

69.    It was foreseeable the Defendant's conduct would cause Plaintiff emotional distress.

14

70.     The Defendant's actions are the actual and proximate cause of the Plaintiff's emotional distress.

71.     The emotional distress suffered by the Plaintiff was severe.

72.     The Plaintiff has suffered severe psychological and medical injuries as a direct result of the continual harassment by the Defendant .The Plaintiff reasserts the injuries stated in paragraphs 51-60 that she suffered as a result of the Defendant's continued harassment. Specifically, her battle with anxiety; depression; panic attacks; high blood pressure; "freak out's"; anger; embarrassment with her friends, family, co-workers, and supervisors; and insomnia. Evidence of this severe emotional damage can be proven by her multiple doctor visits, prescribed medications, her medical diary, and witness statements by friends and family.


### FOURTH CAUSE OF ACITON
### VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

73.     The Plaintiff re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

74.     The South Carolina Unfair Trade Practices Act ("SCUTPA") can be found at S.C. Code § 39-5-10 *et seq*.

75.     The Defendant engaged in unfair trade practices by continually making harassing calls to the Plaintiff after she retained Stone Law Firm to represent her in bankruptcy proceedings.

76.     The unlawful trade practices engaged in by the defendant had an adverse impact on the public interest and have a potential for repetition. The Defendant's own procedures

created a potential for repetition of the unfair and deceptive acts. Allowing the Defendant to continue these unlawful trade practices would be offensive to public policy, immoral, unethical and oppressive to other similarly situated South Carolina Consumers.

77.    The records provided by the Defendant to the South Carolina Department of Consumer Affairs provide proof the Defendant's procedures create a potential for the Defendant's unlawful actions to be repeated. Specifically, on February 9, 2017 the Defendant's records provide, "IF DOES NOT PAY OR FILE BANKRUPTCY BY 02/17/17, RESEND FOR LEGAL APPROVAL JD 02/09/17". Once a debtor retains counsel, then a creditor is prohibited by law from contacting the debtor directly. The Defendant's procedures are to continue to harass a debtor if they do not file bankruptcy by a certain date that they themselves make up. Further evidence that the Defendant's procedures create a potential for repetition are the statements made by the Defendant's employees to Plaintiff's counsel that they **"HAD"** to call the Plaintiff until they received a bankruptcy case number. This policy is stated plainly in the Defendant's records on March 28, 2017.

78.    The Plaintiff suffered actual, ascertainable damages as a result of the Defendant's use of the unlawful trade practices. As indicated earlier, the Plaintiff has suffered significant emotional distress as a result of the harassing calls made by the Defendant, in addition to economic damages.

79.    The Defendant has shown repeated disregard for consumer protection laws in both this case and on previous occasion. The Plaintiff asks this court to take action

against the Defendant because they are clearly unwilling to adhere to the State's

consumer protection laws.

## FIFTH CAUSE OF ACITON
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

80.     The Plaintiff re-alleges and reasserts the information alleged in the preceding

paragraphs as if repeated verbatim.

81.     The Plaintiff asserts, as a matter of law, notice of representation revokes consent

to receive calls from a debt collector since it is illegal in South Carolina to contact a

represented party under the SC Consumer Protection Code (SCCPC).  As asserted earlier,

the Defendant knew or should have known the Plaintiff was represented on December 12,

2016.

82.     Nevertheless, even if notice of representation does not revoke consent, the

Plaintiff and Plaintiff's counsel revoked consent on multiple occasions. This is clearly

noted in the Defendant's records.

83.     Therefore, all the calls made by the Defendant after the notice of representation

are violations of the Telephone Consumer Protection Act (TCPA).

84.     Upon information and belief, based on the records provided by the Defendant,

from December 14, 2016, after the Defendant was put on notice that the Plaintiff was

represented by counsel, until March 31, 2017, the Defendant contacted the Plaintiff at

least fifty-five (55) times. The Plaintiff is of the belief that the Defendant contacted her

more than their records suggest.

17

85.      47 U.S.C. § 227(b)(3)(B) provides a plaintiff can recover for monetary losses or $500 (whichever is greater) for each violation of that law. § 227(b)(3) states that the court can award treble damages if it finds the violations of this section were knowing or willful.

86.      The calls by the Defendant to the Plaintiff were willful. The Plaintiff and Plaintiff's counsel providing the Defendant with continued notices of representation prove the willfulness of the violations and the Defendants records acknowledge that the Defendant knew the Plaintiff was represented and had asked the Defendant to stop the harassing calls.

WHEREFORE, the Plaintiff, Deborah Hutto, respectfully prays for the following relief:

a)  Judgment against the Defendant pursuant to the first cause of action for violations of the South Carolina Consumer Protection Code.

b)  Judgment against the Defendant pursuant to the second cause of action for negligence.

c)  Judgment against the Defendant pursuant to the third cause of action for negligent/intentional infliction of emotional distress

d)  Judgment against the Defendant pursuant to the fourth cause of action for violations of the South Carolina Unfair Trade Practices Act. The Plaintiff asks the Court to award treble damages and attorneys fees as permitted by law.

e)  Judgment against the Defendant pursuant to the fifth cause of action for violations of the Telephone Consumer Protection Act. The Plaintiff asks

the Court to find the Defendant's actions were knowing and willful and to

award treble damages as permitted by law.

    f)   For such other and further relief as the court shall deem appropriate.

Dated this December 12 ,  2019.

                                    Respectfully Submitted,

                                    /s/ John R. Cantrell, Jr.
                                    Attorney for Plaintiff
                                    John R. Cantrell, Jr., Dist. Ct ID # 4951
                                    Cantrell Legal PC, PO Box 1276
                                    Goose Creek, SC 29445-1276
                                    843-797-2454 (office)
                                    309-213-0922 (fax)
                                    lawyer@comcast.net